IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS L. WARD,

    Plaintiff,

v.                                                                                No. CIV 99-1070 BB/WWD

WAL-MART STORES, INC.,

    Defendant.

## MEMORANDUM OPINION ON JUDGMENT

**THIS MATTER** is before the Court on Plaintiff's motions for a determination on back pay, equitable relief, and attorney's fees. Based on the jury's verdict, the Court **FINDS** Plaintiff is entitled to the relief detailed below.

### *Facts*

Plaintiff was hired in October 1998 to work as a loss prevention associate at the Wal-Mart Distribution Center ("DC") being constructed in Los Lunas, New Mexico. When the DC began actual operations in early 1999, Plaintiff had to inspect the semi-truck-trailers entering and leaving the DC. When any truck entered the DC, the truck driver was asked about the contents. If there was produce within, the seal was left intact

so as not to compromise the quality of the product. If, however, an incoming Merit[1] truck driver stated that his truck was empty, then the loss prevention associate was to break the seal, open the trailer door, look inside, and verify that the Merit truck was in fact empty.

Plaintiff was assigned the second shift which was the one with the heaviest truck traffic. For two months he performed his job by having the Merit drivers open their truck doors. Following an argument with a driver, Plaintiff revealed he had a prior injury and could not open the truck door without an accommodation. Plaintiff pointed out that no one at Wal-Mart had ever indicated that being a loss prevention associate required upper body strength and that Plaintiff had told those who initially interviewed him that he had limited shoulder mobility as a result of a work injury he received while he was a jet mechanic. (Wal-Mart disputed both assertions.)

Plaintiff requested a written policy that Merit drivers be directed to open the truck doors. Wal-Mart then instituted such a policy but only for the Southwest region. Less than one month later this policy was rescinded. On May 5, 1999, the regional loss prevention supervisor decided opening the truck doors was an essential job function of a loss prevention associate and required Plaintiff to confirm he could perform that function. When Plaintiff stated he could not perform that function, he was terminated May 6.

---

[1] Merit is Wal-Mart's dedicated carrier.

**Plaintiff sued Wal-Mart,** *inter alia***, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102** *et seq.***, based on Plaintiff's termination because of his physical disability which Defendant refused to accommodate. Plaintiff also introduced evidence that Wal-Mart filed a frivolous appeal of Plaintiff's claim for unemployment compensation in retaliation for Plaintiff's filing his ADA claim. The Court granted Wal-Mart's motion to dismiss the unemployment retaliation claim at the close of the evidence. The jury found Plaintiff to be a qualified individual who could have performed the essential functions of a loss prevention associate but for Wal-Mart's discrimination. The jury found Plaintiff was damaged in the amount of $4,000.00 because he had to hastily sell his truck below market value to raise cash due to his termination. They also awarded $10,000.00 in punitive damages. The Court reserved the issues of back pay, reinstatement or front pay, and attorney's fees.** *Albemarle Paper Co. v. Moody***, 422 U.S. 405 (1975) (the court is to fashion a decree to limit and cure both past and future discrimination);** *Tyler v. City of Manhattan***, 118 F.3d 1400 (10th Cir. 1997) (all appropriate remedies are available for violation of Title II of ADA).**

*Discussion*

**I.     Back Pay**

**Early in the history of employment discrimination litigation, the Supreme Court recognized there was a strong presumption in favor of back pay awards.** *Albemarle Paper Co. v. Moody***, 422 U.S. at 421;** *see also United States v. Lee Way Motor Freight,*

3

*Inc.*, 625 F.2d 918, 945 (10th Cir. 1979). Plaintiff is therefore presumptively entitled to back pay and the present issues involve what should be included and how it should be calculated.

A. Mitigation

Plaintiff applied for, and actually worked at, several positions during the twenty-six months between his termination and trial. Defendant, however, complains that Plaintiff failed to sufficiently mitigate his damages by being too restrictive in the jobs he sought. Plaintiff's job search and employment records effectively counter this argument.

Given his physical limitations and past employment, he applied for approximately 300 jobs of all types, at numerous entities, in the areas he was arguably qualified. These included positions in security, administrative jobs, warehouse worker, equipment operator, investigator with Child Protective Services and the District Attorney's Office, as an aircraft fueller, handler, mess attendant, custodian, warehouse worker, supervisor and security. It is Defendant's burden to show both that there were substantially equivalent positions available and that Plaintiff failed to use reasonable diligence in seeking such positions. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994); *Shpargel v. Stage & Co.*, 914 F. Supp. 1468 (E.D. Mich. 1996). Defendant has failed to meet that burden. *See Ali v. City of Clearwater*, 915 F. Supp. 1231, 1242 (M.D. Fla. 1996), *aff'd*, 138 F.3d 956 (11th Cir. 1998).

**Defendant next argues that since Plaintiff quit several of these positions, this "constitutes imprudent and unreasonable conduct." The Court disagrees. None of these positions had base pay or benefits as good as Plaintiff's Wal-Mart position. Most of them also involved travel. Moreover, Plaintiff did not sit at home but left most of the positions for better positions and consistently made efforts to look for suitable work. Once again, Defendant has failed to meet its burden.** *Hawkins v. 1115 Legal Serv. Care*, **163 F.3d 684, 695-6 (2d Cir. 1998);** *Brooks v. Fonda-Fultonville Cent. Sch. Dist.*, **938 F. Supp. 1094 (N.D.N.Y. 1996).**

**The Court will, however, take note that following trial, Plaintiff voluntarily left a full time position at L&M Security making $9.00 per hour to accept a 25-hour per week job at $8.00 per hour at DECA. This allowed Plaintiff to commute and work with his wife. While such family values are commendable, such a voluntarily life style choice would not seem an appropriate basis on which to assess damages against Wal-Mart.**

**B.     Unemployment Compensation**

**Defendant next argues the Court should credit the unemployment compensation Plaintiff received against back wages. While Defendant invokes the collateral source rule, it has produced no evidence of the specific amount of its contribution to this "collateral source." Mr. Glass testified he was generally aware that Wal-Mart's account was charged when it lost an unemployment case, but could provide no specifics on Mr. Ward's case. This evidence is required before the Court can consider exercising its**

5

discretion to credit Defendant for its contribution. *Daniel v. Loveridge*, 32 F.3d 1472 (10th Cir. 1994).

    C.    <u>Prejudgment Interest</u>

There is a presumption in favor of prejudgment interest on back pay awards in order to make the Plaintiff whole. *Loeffler v. Frank*, 486 U.S. 549 (1988); *Edwards v. Lujan*, 40 F.3d 1152 (10th Cir. 1994), *cert. denied*, 516 U.S. 963 (1995). The presumption is, however, to the contrary where the jury has awarded punitive damages. *Emmel v. Coca-Cola Bottling Co.*, 904 F. Supp. 723, 726 (N.D. Ill. 1995), *aff'd*, 95 F.3d 627 (7th Cir. 1996); *Hurley v. Atlantic City Police Dept.*, 933 F. Supp. 396 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999). In this case, the jury awarded Plaintiff the $4,000.00 he lost on the forced sale of his truck as well as $10,000.00 in punitive damages. Given these awards and the other relief provided for by the Court herein, prejudgment interest would exceed the "make whole" goal of the damage remedy. *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 623 (5th Cir. 1996).

Using Plaintiff's Exhibit 49 as the appropriate Rosetta stone for back pay, the total wages lost are represented as $35,193.12. On cross-examination, Plaintiff admitted the Exhibit erred in showing him unemployed from July 21 through August 2, 2000, when he was actually still with Burns International. He also admitted he worked a "few hours" overtime at L&M at a rate of $12.00 per hour. In the absence of more specific

6

evidence, the Court will add two hours at the $12.00 rate. Exhibit 49 also stops at June 21, so it will be updated through October 31. This results in lost back pay of $37,123.00.

II. <u>Future Remedies</u>

    A. <u>Reinstatement</u>

Plaintiff seeks reinstatement to his position at Wal-Mart. Defendant vehemently objects. In spite of the jury verdict, Defendant continues to argue "that Plaintiff was dishonest, unscrupulous and scheming in regards to his alleged disability and the manner in which it was revealed." Deft's Resp. Eq. Relief at 2. Although reinstatement is the preferred remedy in employment discrimination cases, *EEOC v. Prudential Fed. Sav. & Loan Ass'n.*, 763 F.2d 1166, 1172 (10th Cir.) (ADEA case), *cert. denied*, 474 U.S. 946 (1985), the Tenth Circuit and other courts have recognized that circumstances may exist which make reinstatement inappropriate. *See, e.g., Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 638 (10th Cir. 1988). One circumstance is when such continuing hostility exists that "a productive and amicable working relationship would be impossible." *Prudential*, 763 F.2d at 1172; *see also Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 498 (8th Cir. 1998). *Price v. Remington Park, Inc.*, 98 F.3d 1349, 1996 WL 563849 (10th Cir. 1996).

The trial testimony and briefs, particularly Defendant's, indicate a continuous and intense animus. The termination events seem to have been exacerbated by the resentment initiated by each party covertly filming the other's activities for purposes of

7

trial. Wal-Mart also notes that both Plaintiff and his wife filed other employment charges against it and that Defendant strongly contested Plaintiff's unemployment compensation without any obvious factual or legal basis. Reinstatement is, therefore, not a viable alternative.

B. Front Pay

Front pay is generally calculated along the same lines as back pay. BARBARA LINDEMAN & PAUL GROSSMAN, II EMPLOYMENT DISCRIMINATION LAW (Ch. 4) p. 1817 (3d ed. ABA). In the present case, front pay would be calculated by subtracting Plaintiff's current wage from the amount he would be earning at Wal-Mart for the period until Plaintiff would retire at age 62. At the time of trial, Plaintiff was earning $9.00 per hour at L&M Technologies.[2] If still employed at Wal-Mart, Plaintiff would likely be earning $12.85 per hour.[3] The differential of $3.85 per hour for forty hours per week is $154.00, times fifty weeks per year is $7,700.00 annually. This amount multiplied by the seven years until Plaintiff's scheduled retirement equals $53,900.00.

Plaintiff notes Wal-Mart employees have received quarterly bonuses in the past. While the Court has included seniority raises Plaintiff would likely have received in

---

[2] As noted, Plaintiff left L&M to go back to work for DECA at the commissary where his wife works. Although he is earning a lower hourly rate and only working 25 hours per week, Plaintiff is adding to his government pension. The Court will therefore calculate Plaintiff's wages based on his L&M salary.

[3] This is based on the wages earned by Mr. Anderson, a comparable employee who started at Wal-Mart with Plaintiff.

calculating the $12.85 per hour Plaintiff would currently be receiving at Wal-Mart, future bonuses seem too speculative. *Long v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 882 F. Supp. 1553, 1561 (D. Md. 1995) (raises and bonuses appropriate if certain); *Holthaus v. Compton & Sons, Inc.*, 71 F.R.D. 18, 19 (E.D. Mo. 1975) (bonus depends on performance).

### III. Attorney Fees

Plaintiff filed this action seeking relief on three claims: a claim of discrimination under the ADA, a claim of retaliation arising out of Plaintiff's filing of an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and a claim of retaliation under the ADA arising out of Wal-Mart's appeal of an unemployment compensation award. Summary judgment was entered on the retaliation claim related to alleged age discrimination. Two claims remained at trial: the ADA claim of discrimination and the claim of retaliation arising out of the unemployment appeal. The Court granted Defendant's motion under Federal Rule of Civil Procedure 50 on the retaliation claim. The jury found in favor of Plaintiff on the remaining ADA discrimination claim. Plaintiff did not claim any damages based upon emotional or mental distress. The jury awarded $4,000.00 in compensatory damages related to Plaintiff's truck sale and $10,000.00 in punitive damages.

Plaintiff moved for an award of attorney's fees and expenses in this case in the amount of $34,374.72. Defendant responds by requesting that the Court reduce this

amount by half on the ground that Plaintiff failed to prevail on his claim of unemployment retaliation. With slight modification, the Court finds Plaintiff's position supported by the applicable law.

"Where a lawsuit consists of related claims, a plaintiff should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). In this case, the unemployment retaliation claim grew out of the ADA discharge claim and was but a minor portion of Plaintiff's claim. Even though the Court did not send the unemployment retaliation claim to the jury, they awarded Plaintiff $4,000.00 in compensatory damages related to the sale of his truck. This sale was necessitated because Plaintiff was terminated by Wal-Mart and in part because his unemployment compensation was delayed. To that extent the facts are intertwined. When discrimination and retaliation claims are intertwined and Plaintiff receives the bulk of the relief sought, it is not necessary to allocate and limit fees. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863 (7th Cir. 1995); *Altman v. Port Auth. of N.Y. & N.J.*, 879 F. Supp. 345 (S.D.N.Y. 1995).

The Tenth Circuit has rejected the use of a simplistic mathematical reduction of attorney's fees in a civil rights case. In *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995), the Court of Appeals reversed and remanded the court's reduction of a fee award by 75% based on an arbitrary mathematical finding that Plaintiff prevailed on only two of eight claims. Relyng on *Hensley v. Eckerhart*, 461 U.S. at 424, the Court said

"[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee .... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." 61 F.3d at 1511. The Tenth Circuit further quoted *Hensley* that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The Tenth Circuit extended the unitary relief concept to its logical conclusion in *Brandau v. State of Kansas*, 168 F.3d 1179 (10th Cir. 1999). In that case, Plaintiff, a former employee of the State of Kansas, sued the State for hostile work environment and *quid pro quo* sexual harassment, retaliation, and constructive discharge under Title VII, 42 U.S.C. §§ 2000e-2(a)(1) to 2000e-17. Brandau sought twenty-one months' back pay and $50,000.00 in compensatory damages. She prevailed only on her hostile work environment sexual harassment claim, and the jury awarded her nominal damages of $1.00. The district court found that Plaintiff was nonetheless the prevailing party and awarded her attorney's fees and expenses in the amount of $41,598.13. The Tenth Circuit upheld the award. The Court adopted the three-prong analysis set forth in *Farrar v. Hobby*, 506 U.S. 103 (1992), for determining the "relevant indicia of success" in a civil rights case: (1) the difference between the judgment recovered and the

11

judgment sought; (2) "the significance of the legal issue on which the plaintiff prevailed"; and (3) "the public purpose served" by the litigation. *Brandau* at 1181. The issue on which Plaintiff Ward prevailed, *i.e.*, discrimination based on disability, was a significant success. The jury's "verdict vindicated the violation" of Plaintiff's civil rights. *Id.* The award of punitive damages, loss of damages for the sale of his truck, and the award of back pay shows an excellent result in relation to the relief sought by Plaintiff. In contrast, Plaintiff's request for damages for the unsuccessful claim of unemployment retaliation, were, at most, nominal.

Defendant does, however, make a valid point as to the 3.4 hours attorney time it challenges as futile. Counsel apparently spent this time talking to Plaintiff's treating physician, securing the services and directing the preparation of certain trial drawings which were never produced, and procuring an authenticated copy of a State agency report and a doctor's report from persons in California. While it is a compliment to the efficiency of Plaintiff's counsel so few hours are disputed, activities which do not relate to productive litigation activity may be excluded. *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997); *EEOC v. Clear Lake Dodge*, 60 F.3d 1146, 1154 (5th Cir. 1995). The Court will deduct these hours and award $33,902.22 in attorney's fees.

A judgment containing this amount will be filed forthwith.

**Dated at Albuquerque this 19th day of November, 2001.**

                                                **BRUCE D. BLACK**
                                                **United States District Judge**

**Counsel for Plaintiff:**

    **Mary G. Wilson, AUNGIER & WILSON, Albuquerque, NM**

**Counsel for Defendant:**

    **Carlos M. Quiñones, WAL-MART STORES, Bentonville, AR**
    **Cindy J. Lovato-Farmer, NARVAEZ LAW FIRM, Albuquerque, NM**